**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM J. DILLNER, JR. and ROY E. ) | |
| MARSHALL, Designated Trustees of the ) | |
| Western Pennsylvania Teamsters and ) | |
| Employers Pension Fund, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION NO. 3:10-cv-00122 |
| ) | JUDGE KIM R. GIBSON |
| v. ) | |
| ) | |
| SHEESLEY SUPPLY COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

### I.    SYNOPSIS

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment (Doc.

No. 18). Defendant did not file a response to Plaintiffs' motion. For the reasons set forth below,

the motion is **GRANTED** with regards to the legal issue of withdrawal liability only. Plaintiffs

are directed to supply the Court with further information in accordance with this Memorandum,

such that a determination as to the valuations of each damages award can be made.

### II.    JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 1132(e)(1) and

1451(c), which grant federal district courts exclusive jurisdiction over all civil action matters

involving the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

1

("ERISA"). Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Pennsylvania.

## III. BACKGROUND

On May 5, 2010, Plaintiffs commenced the instant action by filing a Complaint alleging violations of the Labor Management Act of 1947, ERISA, and the Multiemployer Pension Plan Amendments Act ("MPPAA"). (Doc. No. 1). Defendant filed its Answer on November 18, 2010, admitting all but four of Plaintiffs' allegations in the Complaint. (Doc. No. 5). Subsequently, several status conferences were held before the Court on this matter. At the last status conference held on March 15, 2012, Defendant failed to appear, and Plaintiffs' counsel indicated he would be filing a motion for summary judgment soon thereafter. Plaintiffs filed the present motion on March 23, 2012 and also filed their brief in support of the motion and a concise statement of material facts, as required under Local Rule 56.1. (Doc. Nos. 18, 19, 20). Defendant was given the allotted time in which to respond to Plaintiffs' Motion for Summary Judgment, but has failed to submit a response or even a request for an extension of time to respond.

From the parties' filings, it is evident that most of the material facts present in the case are undisputed. Plaintiffs allege, and Defendant admits, that Defendant, Sheesley Supply Company, Inc. ("Sheesley"), entered into a collective bargaining agreement ("Agreement") with Teamsters Local Union 110 ("Local 110"), through which Defendant agreed to make contributions to the Western Pennsylvania Teamsters and Employers Pension Fund ("Pension Fund"). (Doc. No. 1 at 1). In early 2006, the Pension Fund issued a partial withdrawal assessment due to the decline in the number of Defendant's contribution base units for the 2002

2

through 2004 plan years. (*Id.* at 2). Similarly, a second partial withdrawal assessment was issued in March 2007 based on a decline in Defendant's contribution base units for the 2003 through 2005 plan years. (*Id.*). Both withdrawal assessments were made through notices ("Demand Letters") sent to Defendant. (*Id.*). These Demand Letters were issued pursuant to Section 4219 of ERISA, 29 U.S.C. § 1399, and the second Demand Letter instructed Defendant that it must pay its assessed withdrawal liability under terms of a monthly payment schedule, with recurring monthly payments in specified amounts and full payment ending on December 1, 2015. (*Id.*). The Demand Letters also "stated that if payment of withdrawal liability was not made when due, and such payment was not made within 60 days after the Company received written notice from the Pension Fund," then, "immediate payment of the remaining balance … plus any accrued interest," would be due. (*Id.* at 2-3).

Additionally, the Demand Letters instructed Defendant that if it disputed the withdrawal liability or the scheduled payments, then "it must comply with the Pension Fund's review procedure, a copy of which was enclosed with the Demand Letters." (*Id.*). This notice specifically directed Defendant to submit its request for review within 90 days of receipt of the Demand Letters, as required by ERISA § 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A). (*Id.*). Such requests for review were submitted by Defendant; however, following an October 2007 hearing, the "Company was informed that the Pension Fund's Trustees had determined that the objections presented … were without merit and should be rejected," and that the two withdrawal assessments had been properly calculated. (*Id.* at 3-4). Subsequently, Defendant failed to challenge the review decisions when it did not initiate arbitration as stipulated under the requirements of the MPPAA. (*Id.*). Plaintiffs sent Defendant a notice of delinquency on March 9, 2009, demanding that all past due payments be made within 60 days. (*Id.*). Plaintiffs asserted

3

that Sheesley has made 35 payments in the total amount of $166,707.80, to which Defendant admits. (*Id.*) The remaining amounts owed, plus Plaintiffs' alleged liquidated damages and attorney's fees amounts will be the focus of this opinion.

Defendant's answer admits all allegations set forth in Plaintiffs' Complaint, except in four instances. First, Defendant asserts that the first partial withdrawal assessment "was unfair and unreasonable based on Sheesley ... no longer being an active Teamster employer." (Doc. No. 5 at 1). Second, Defendant disputes the total amount owed with regards to both partial assessments less any prior installment payments made by Defendant. (*Id.*) Plaintiffs contend this amount is $395,487.77. (Doc. No. 1 at 5). Defendant denies "the amount is owed," at all, and does not specify an alternate amount if anything is owed. (Doc. No. 5 at 2). Third, Defendant denies the amount of liquidated damages as being "excessive." (*Id.*). Plaintiffs assert that under the terms of the Pension Fund agreement, as allowed by ERISA, an amount of $79,097.55 in liquidated damages, $79,097.55 in attorney's fees, and $350.00 in court costs—for a total of $158,545.10—is owed. (Doc. No. 1 at 5-6). These amounts yield a total of $554,032.87, for which Plaintiffs ask this Court to enter judgment in their favor. (Doc. No. 5 at 2).

## IV.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In the words of the Third Circuit, "[s]ummary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact . . . and the moving party is

4

entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir.

2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); see also *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56 (a).[1] Disputes of fact are genuine

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *McGreevy v. Stroup*, 413

F.3d 359, 363 (3d Cir. 2005). Material facts are those which will affect the outcome of the trial

under governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of stating the basis for its motion and

identifying those portions of the record which demonstrate the absence of a genuine dispute of

material fact. See *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party

opposing summary judgment "may not rest upon the mere allegations or denials of the . . .

pleading," but "must set forth specific facts showing that there is a genuine issue for trial."

*Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal citations omitted);

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); see also *Podobnik*

*v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary

judgment "must present more than just bare assertions, conclusory allegations or suspicions to

show the existence of a genuine issue") (internal quotation marks omitted).

## V. DISCUSSION

Plaintiffs-trustees assert that summary judgment should be entered in their favor and that

an award of $395,487.77 in withdrawal liability and $158,545.10 in liquidated damages,

---

[1] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as
subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue'
bec[ame] genuine 'dispute.'" FED. R. CIV. P. 56 advisory committee's note, 2010 amend.

attorney's fees, and court fees should be entered against Defendant. In assessing Plaintiffs' motion for summary judgment, each averment will be addressed in turn. Before examining each claim, however, the Court will address the procedural deficiencies of Defendant's non-response to Plaintiffs' instant motion.

### a. Local Rules on Summary Judgment

The Local Rules of this district provide explicit instructions on how litigants are to file and respond to motions for summary judgment. Local Rule 56.B requires that a motion for summary judgment set forth succinctly, but without argument, the specific grounds upon which the judgment is sought. LCvR 56.B. Moreover, the motion must be accompanied by:

> (1) a concise statement of material facts ("CSMF") setting forth in separately numbered paragraphs the facts essential to the Court's decision which the moving party contends are undisputed and material (with citations to the record to support the party's contentions);
>
> (2) a supporting memorandum addressing the applicable law and explaining why there are no genuine factual disputes to be tried and why the moving party is entitled to judgment as a matter of law; and
>
> (3) an appendix of documents referenced in the CSMF, although such documents need not be filed in their entirety as the relevant portions of each referenced document may be extracted and highlighted.

LCvR 56.B.1-3.

> To oppose a motion for summary judgment, a party must file its own:
>
> (1) responsive CSMF admitting or denying whether each fact contained in the movant's CSMF is undisputed and/or material, setting forth the basis for any denial (with

supporting record citations), and setting forth in separately numbered paragraphs any other facts that are allegedly at issue and/or necessary for the Court's consideration of the summary judgment motion;

(2) supporting memorandum addressing the applicable law and explaining why there are genuine factual disputes to be tried and why the moving party is not entitled to judgment as a matter of law; and

(3) appendix of documents referenced in the responsive CSMF.

LCvR 56.C.1-3. This Court "strictly adhere[s] to the summary judgment procedures set forth both by the Federal and Local Rules[,]" and failure to comply can result in penalties including the Court deeming as admitted a movant's facts where the non-movant does not properly controvert them. See *Rozier v. United Metal Fabricators, Inc.*, No. 3:09-257, 2012 U.S. Dist. LEXIS 6200, \*7 (W.D. Pa. Jan. 19, 2012) (citations omitted).

In the instant case, Defendant has failed to file a reply opposing Plaintiffs' motion for summary judgment. Defendant's only pleading during the course of this case was an Answer filed on November 18, 2010. (Doc. No. 5). As the only filing focused on the merits of the case, Defendant's answer all but admits Plaintiffs' allegations as set forth in both their complaint and pleadings related to the instant motion, except for the actual amounts alleged by Plaintiffs with regards to Defendant's withdrawal liability. While making use of Defendant's answer as an opposition to Plaintiffs' motion for summary judgment would be insufficient for the requirements of the opposing party's filings under the procedural rules related to summary judgment motions, a discussion of Plaintiffs' allegations will nonetheless be undertaken here. For the reasons stated above, however, because Plaintiffs' motion for summary judgment comes before this Court unopposed by Defendant, the Court has no choice but to consider movant-

7

Plaintiffs' allegations as true without any genuine dispute as to any material fact existing. As such, the Court will **GRANT** Plaintiffs' Motion for Summary Judgment as detailed below.

### b. Withdrawal Liability

As articulated above, while the Court finds in favor of the Plaintiffs on the basis of the procedural requirements for summary judgment motions, it will still engage in an evaluation of the facts as presented by Plaintiffs as applied to the governing law. As established under ERISA, and amended by the MPPAA, 29 U.S.C. §§ 1381-1461, recovery of partial withdrawal liability assessments is the primary basis upon which Plaintiffs originated this action.

ERISA was enacted by Congress to protect employees' pension rights. See *Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 416 (1995) (discussing purpose of ERISA and MPPAA amendments). While the enactment of ERISA aimed to provide minimum funding standards for pension funds, Congress subsequently found that it "did not adequately protect plans from the adverse consequences that resulted when individual employers terminate[d] their participation, or withdr[e]w from, multiemployer plans." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722 (1984). It became evident that "many employers were withdrawing from multiemployer plans because they could avoid withdrawal liability if the plan survived for five years after the date of their withdrawal." *SUPERVALU, Inc. v. Bd. of Trs. of Sw. Pennsylvania & W. Maryland Area Teamsters & Emp'rs Pension Fund*, 500 F.3d 334, 336 (3d Cir. 2007) (citing *Debreceni v. Outlet Co.,* 784 F.2d 13, 15-16 (1st Cir. 1986)). As a result of this, several years after ERISA was enacted Congress codified the MPPAA in order to "foster the growth and continuance of multiemployer pension plans." *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 168

8

(3d Cir. 2002) (citing *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 196 (1997)).

The primary goal of the MPPAA is "to insulate these plans in order to protect the retirement benefits of covered employees. In order to satisfy this goal, the MPPAA requires employers who withdraw from underfunded multiemployer pension plans to pay a withdrawal liability." *Foodtown, Inc.*, 296 F.3d at 168 (citing *ILGWU Nat'l Retirement Fund v. Minotola Indus., Inc.,* 1991 WL 79466, at *3 (S.D.N.Y.1991) (withdrawal liability is imposed in order "to ensure that workers' retirement benefits w[ill] actually be available during retirement.")). In essence, "[t]he imposition of withdrawal liability is designed to lessen the harm felt by the pension fund by the loss of the withdrawn employer's future contributions." *O'Connor v. DeBolt Transfer, Inc.*, 737 F. Supp. 1430, 1435 (W.D. Pa. 1990) (internal citations omitted).

Here, the threshold issue raised by Plaintiff's motion for summary judgment is whether the Pension Fund's partial withdrawal liability assessments can be challenged by Defendant in Federal District Court. It is uncontested that the parties entered into a collective bargaining agreement, which formed the basis of the Pension Fund plan, and as such ERISA and the MPPAA are the relevant governing authorities for disputes related to the Pension Fund. Upon an employer's withdrawal or underpayment to a plan, the plan trustees determine the amount of withdrawal liability. See 29 U.S.C. §§ 1381, 1382. The plan trustees are then required to make a formal demand for payment and notify the employer of both the amount of liability and a schedule for payments, as was the case here. See 29 U.S.C. § 1399(b)(1). Within 90 days of receipt of this notice, the employer may request a review of the liability by the plan trustees. See 29 U.S.C. § 1399(b)(2)(A). If, after the review, a dispute between the parties persists, then either party may request the initiation of arbitration. See 29 U.S.C. § 1401(a)(1).

9

Pursuant to the MPPAA, "withdrawal liability disputes between pension funds and employers [must] be resolved through arbitration," prior to bringing the dispute to court. *O'Connor*, 737 F. Supp. at 1435.[2] If the employer, however, does not initiate arbitration proceedings to challenge the withdrawal liability assessment within a specified time frame,[3] then it will "forego its right to pursue the dispute." *Id.* In other words, "[w]hen an employer ignores its arbitration rights, MPPAA unambiguously provides that the liability is fixed and the employer's right to dispute the assessment is waived." *Teamsters Pension Trust Fund of Philadelphia and Vicinity v. Domenic Cristinzio, Inc.*, 994 F. Supp. 617, 621 (E.D. Pa. 1998). Here, there is no indication that Defendant attempted to initiate an arbitration proceeding to challenge the Pension Fund's withdrawal liability assessment. Indeed, Defendant admitted that it "failed to initiate arbitration pursuant to the guidelines set forth in MPPAA." (Doc. No. 1 at 4; Doc. No. 5 at 2). While the record does indicate that Defendant asked for a review of the liability assessments on two separate occasions, there was no initiation of arbitration proceedings after the second review in which the Pension Fund denied Sheesley's request. Failing to initiation arbitration proceedings, with clear statutory guidance under the MPPAA, was tantamount to Defendant abdicating its right to challenge the withdrawal liability assessments in this Court.

---

[2] Title 29 U.S.C. § 1401(a) provides that "any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under Sections 1381 through 1391 pertaining to the assessment of [withdrawal liability] shall be resolved through arbitration." 29 U.S.C. § 1401(a). Additionally, it should be noted that the only instances in which the Third Circuit has found that arbitration need not be exhausted as a remedy stipulated by Congress through the MPPAA, has occurred when a fund's withdrawal liability assessment is made under a facially unconstitutional challenge by the employer. See *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290 (3d Cir. 1982).

[3] Section 1401(a)(1)(A)-(B) provides that, "Either party may initiate the arbitration proceeding within a 60-day period after the earlier of … the date of notification to the employer under section 1399 (b)(2)(B) of this title, or … 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title." 29 U.S.C. § 1401(a)(1)(A)-(B).

While these reasons would be sufficient to find in favor of Plaintiffs had the Defendant opposed the Motion for Summary Judgment, its failure to even reply to the motion, as discussed above, is the primary basis for granting Plaintiffs' motion. Thus, on the basis of procedural requirements, and governing law,[4] the withdrawal liability assessments cannot be disputed as a material fact in any proceeding before the Court.

### c. Withdrawal Liability Amounts, Liquidated Damages, and Attorney's Fees

Having established both Plaintiffs' right to collect the previously charged withdrawal assessments and Defendant's concomitant liability for the withdrawal liability, the Court will now turn to the issue of determining the amount of withdrawal liability owed, as well as the statutory amounts prescribed for liquidated damages and attorney's fees and costs. As discussed above, because Defendant failed to respond to Plaintiffs' assertions, the facts alleged are now established as undisputed. FED. R. CIV. P. 56(e); see *Central States, Southeast and Southwest Areas Pension Fund v. GL & B Leasing Co., Inc.*, 874 F. Supp. 217, 218 (N.D. Ill. 1995). While it is undisputed that Defendant is liable for the withdrawal liability assessments, Plaintiffs' alleged facts concerning damages require further scrutiny.

The Third Circuit has found that the MPPAA "amendments [ ] create[d] a statutory right to actual damages ... and to attorney's fees and costs ..." *Teamsters Pension Trust Fund of Philadelphia and Vicinity v. John Tinney Delivery Service, Inc.*, 732 F.2d 319, 323 (3d Cir. 1984). Specifically, under 29 U.S.C. § 1132(g)(2), the statute requires that:

---

[4] As such, Defendant—even if it had challenged the assessments by filing a response to Plaintiffs' Motion for Summary Judgment—would have been unable to prevail because of its failure to exhaust the available, statutorily-required administrative remedies. Because the assessments themselves and their stated amounts were not challenged through arbitration and cannot subsequently be challenged in court, there can be no possibility this fact can affect the outcome of the suit under governing law. Therefore, the Court finds that there can be no dispute as to Defendant's liability with regards to the withdrawal liability assessments as pled by Plaintiffs.

11

[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to
enforce section 1145 of this title in which a judgment in favor the plan is awarded,
the court shall award the plan—

- (A) the unpaid contributions,
- (B) interest on the unpaid contributions,
- (C) an amount equal to or greater of—
    - (i) interest on the unpaid contributions, or
    - (ii) liquidated damages provided for under the plan in an amount not
      in excess of 20 percent (or such higher percentage as may be
      permitted under Federal or State law) of the amount determined
      by the court under subparagraph (A),
- (D) reasonable attorney's fees and costs of the action, to be paid by the
  defendant, and
- (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Plaintiffs allege that there were two partial withdrawal liability assessments made in the course of their dealings with Defendant from 2001 forward. The first assessment was in the amount of $264,363.00 for the 2002 through 2004 plan years. (Doc. No. 1 at 2; Doc. No. 18 at 2). The second assessment was made for the 2003 through 2005 plan years in the amount of $168,902.00. (Doc. No. 1 at 2; Doc. No. 18 at 2). Together, the total amount of the two partial withdrawals assessed against Sheesley was for $433,265.00. (Doc. No. 1 at 2; Doc. No. 18 at 2). In order to remedy the withdrawal liability assessments, Plaintiffs issued a monthly payment schedule lasting 119 months. (Doc. No. 1 at 5; Doc. No. 18 at 4). The payment schedule included an initial set of 65 consecutive monthly payments of $4,763.08 per month, then 53 consecutive monthly payments of $4,681.46 per month, and a final payment of $4,477.99 in month 119. (Doc. No. 1 at 5; Doc. No. 18 at 5). The total amount of all monthly payments equals $562,195.57. In response to the Demand Letters and notification of the payment schedule, it is undisputed that the Defendant paid 35 monthly payments of $4,763.08,

for a total of $166,707.80.  (Doc. No. 1 at 4; Doc. No. 18 at 3).  Thus, the total payment schedule amount less Defendant's previously paid 35 installments yields a total of $395,487.77.[5]

With regard to Plaintiffs' request for liquidated damages, this issue is directly tied to the point in time at which the debt was accelerated by the Pension Fund.  Plaintiffs argue that Sheesley owes liquidated damages equal to 20 percent of the principal withdrawal liability,[6] which would total $79,097.55.  (Doc. No. 18 at 5).  The issue this Court must determine is the correct amount of total unpaid contributions from which to base a determination of liquidated damages.[7]

An action for withdrawal liability under the MPPAA is treated as an action for unpaid contributions, or "delinquent" contributions.   The statute allows for 20 percent of any

---

[5] What is unclear from the record as reflected by Plaintiffs' supporting documents is whether the monthly payment schedule included interest based on a specified interest-accruing schedule, or whether it is purely a figure of the unpaid contributions. While the Court can speculate as to this figure including interest on the withdrawal liability assessments since the total amount of the monthly payment schedule exceeded the total withdrawal liability by $128,930.57, the Court would be well-aided in making a determination as to the amount of unpaid contributions with or without interest by the inclusion of Plaintiffs' interest schedule as specifically referred to in its March 9, 2007 Demand Letter as "a statement of actuarial assumptions and computation methods used in calculating the liability." (Doc. No. 18-1 at 11). What needs greater clarity for determination of these damages is whether the withdrawal liability amount owed as referred to by Plaintiffs in their motion is the "unpaid contribution," alone or "unpaid contribution," and "interest on the unpaid contribution," together, as specified by the statute. Relatedly, if Plaintiffs argue that the withdrawal liability (*i.e.*, the unpaid portion of the monthly payment schedule that seemingly includes future accrued interest) amount owed includes interest assessed prior to this action and this amount is purely the "unpaid contribution," for which they are also entitled "interest on the unpaid contribution," (*i.e.*, interest on the unpaid monthly payment total), then they will be required to show such legal precedent authorizing this additional amount of interest.

[6] It would appear that the principal withdrawal liability amount cited by Plaintiffs to calculate the 20 percent of liquidated damages ($79,097.55) is the unpaid portion of the 119 month payment ($395,487.77), rather than total of the two partial assessments ($433,265.00) originally assessed against Defendant. Plaintiffs, thus use the total amount of $592,195.57 as their starting point for calculating liquidated damages.

[7] There are actually two issues at play here with regard to the liquidated damages calculation and the correct unpaid contribution basis amount. First, can the liquidated damages be measured based on both past and future unpaid contributions or only on past unpaid contributions? Second, is the correct unpaid contribution amount that of the original total withdrawal liability assessments or the total unpaid amounts of the 119 month payment schedule (*i.e.*, total withdrawal liability assessments plus future interest)? Each issue will be addressed in turn.

13

"delinquent contribution" to be charged to a defendant as liquidated damages. 29 U.S.C. § 1132(g)(2)(C)(ii); see also *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 603 (7th Cir. 2008). This is the penalty paid by the employer for forcing a plan sponsor to litigate. See *Central States, Se. & Sw. Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1341 (7th Cir. 1992). A contribution, however, is delinquent only if the "employer fails to make timely payment." 29 U.S.C. § 1401(d). Accordingly, it has been found that "liquidated damages should be due only on delinquent payments, not on the portions of withdrawal liability that have not yet come due." *El Paso Co.*, 525 F.3d at 604. With this in mind, it is imperative to "first determine whether the debt was ever accelerated and, if so, when acceleration occurred," in order to determine whether the correct amount of unpaid contributions consists of past unpaid amounts or past and future unpaid amounts. *Id.*

The inquiry here concerns what was due and what is presently due. As a preliminary matter, Plaintiffs' filings refer to the amount of $395,487.77 owed to them as "withdrawal liability." (Doc. No. 18 at 5). This amount reflects the total amount of the payment schedule ($562,195.57) less the 35 monthly payments made by Defendant ($166,707.80), which is a different amount from the total assessed withdrawal liability as stipulated in the March 2007 Demand Letter as being $433,265.00.[8] The Plaintiffs allege that the entire withdrawal liability was and is due because it accelerated the payment schedule when Sheesley defaulted by failing to make its withdrawal liability payments as stipulated under the payment schedule. (See Doc. No. 1 at 5). This fact is undisputed; however, while the Plaintiffs use the term "withdrawal liability" to refer to the base amount used for calculating liquidated damages, it can be assumed

---

[8] While it might seem trivial to spell out these different amounts and terms, the Court recognizes that before a determination of liquidated damages can be made, Plaintiffs must provide greater clarity as to the amounts they are requesting and whether they fit the statutory definitions and case law determinations.

14

that this amount is what they would consider "unpaid contributions" under the MPPAA terminology of 29 U.S.C. 1132(g)(2).

With regard to the total past and future unpaid monthly payments, it is undisputed that Defendant's last payment was made for the December 1, 2008 scheduled payment.[9] (See Doc. No. 1 at 4). The subsequent three payments for January through March 2009 were not received, and pursuant to 29 U.S.C. 1399(c)(5), the Pension Fund sent Defendant a notice of delinquency, stating that "[t]he Pension Fund hereby demands that the Company pay all past due installment payments within 60 days of your receipt of this notice." (Doc. No. 18-1 at 39). In accordance with ERISA and the MPPAA, Plaintiff indicated that failure to meet all past due payments would constitute "default under Section 4219(c)(5) of ERISA, 29 U.S.C. §1399(c)(5)," and therefore accelerate the remaining unpaid amounts under the payment schedule.[10] (Id.). While Defendant did make its December 2008 payment after receiving the delinquency notice, it was ultimately unable to cure its failure to make the three other monthly payments that had come due by March

---

[9] While not immediately evident from Plaintiffs' Complaint and Motion for Summary Judgment, it appears that the last received payment for the scheduled payment of December 2008 was actually received after March 2009, and more specifically, after March 9, 2009—the date of Plaintiffs' delinquency notice to Defendant. This fact is evident from the affidavit of Gerri Talerico, the Office Manager of the Pension Fund. (See Doc. No. 18-1). Specifically, she states: "Since the March 9, 2009 Letter was sent, the Company made one additional payment, meaning that it has made a total of 35 monthly withdrawal liability payments of $4,763.08, totaling $166,707.80." (Doc. No. 18-1 at 4).

[10] In determining whether a default has occurred after receipt of a delinquency notice for failure to pay the withdrawal liability assessments under ERISA, the actual language of 29 U.S.C. § 1399(c)(5) states that "default' means ... the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notice from the plan sponsor of such failure ...." 29 U.S.C. § 1399(c)(5)(A). While it may be possible that this language could be construed as a proper default not taking place under these circumstances because one of the four past due installments (the December 2008 monthly payment) was made after receipt of the delinquency notice, this Court believes otherwise. It is unlikely that partial payment of past due amounts negates the fact that one is currently in delinquency. Rather, the better interpretation seems to be that once delinquency notice is provided to a party, curing it within the sixty day period means curing it fully by paying the total amount that is past due. To mean anything other than this would certainly invite innumerable methods through which delinquent parties could forego the consequences of being in default (i.e., acceleration of the entire payment) on an indefinite basis.

15

2009. Therefore, Defendant had the opportunity to avoid default, but failed to do so by not bringing the past due balance up to date, and acceleration of the balance became the next step for the Pension Fund, in accordance with 29 U.S.C. § 1399(c)(5). Thus, under these circumstances, the entirety, both past and future payments, of the unpaid contributions is now due.

As to the amount owed by Defendant, the statutory language is clear: "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). Here, the Plaintiffs claim that "the Company is liable for $395,487.77," which reflects the remainder of the first portion of the payment schedule of $4,763.08 for 30 months (totaling $142,892.40), the second portion of the payment schedule of $4681.46 for 53 months (totaling $248,117.38), and the final portion of the payment schedule of $4,477.99 for one month (totaling $4,477.99). (Doc. No. 18 at 5). While this total amount reflects the remaining outstanding balance of the payment schedule, what Plaintiffs do not specify is whether these amounts represent amounts for the "unpaid contributions" only or "unpaid contributions" plus "interest on the unpaid contributions."[11] It could be assumed that the monthly payment schedule took into account future interest on the assessed withdrawal liability as determined under the Pension Fund's plan agreement.[12] With this in mind, however, an accounting of the outstanding balance of the actual

---

[11] While the Court notes that Plaintiffs' filings include a copy of the original March 9, 2007 "Notice of Partial Withdrawal and Demand for Payment of Partial Withdrawal Liability" letter, whereby the Pension Fund spells out the amounts owed and the monthly payment schedule lasting until 2015 (See Doc. No. 18-1 at 10), the Plaintiffs did not proffer the Court the referred to documents originally included with the letter—specifically, "Exhibit 1, Section K." (*Id.*).

[12] This would appear likely in light of the fact that Plaintiffs did not ask for a separate damages award of accrued interest as specified under 29 U.S.C. 1132(g)(2)(B), but rather only the unpaid "withdrawal liability amount." But it could equally be that Plaintiffs' unpaid "withdrawal liability" amount is in actuality the unpaid contributions plus interest on those unpaid contributions. If that is the case, Plaintiffs need to so specify this and will have the opportunity to do so in their subsequent filings.

withdrawal liability versus past and future accrued interest is needed to determine the proper "unpaid contributions" and "interest on unpaid contributions" amounts in this case. With this in mind, the Court will allow Plaintiffs to submit the necessary documents relevant to determining these amounts in order to issue the proper statutory award.

Similarly, clarification over the correct amount of unpaid contributions is also necessary to determine the proper amount of liquidated damages. Determining 20 percent in liquidated damages would be significantly different if the 20 percent is measured from the unpaid contributions alone, rather than from the unpaid contributions and accrued interest together. Similarly, while Plaintiffs argue for attorney's fees as being a similar 20 percent of the "principal withdrawal liability," they fail to specify whether the principal withdrawal liability (*i.e.*, outstanding liability on the payment schedule) of $395,487.77 is principal alone or principal plus accrued interest. More information is needed to make an accurate determination on the basis of measurement for these damages.

Additionally, while attorney's fees are to be measured on a reasonable basis, Plaintiffs allege that Section 5.3(c) of the Trust Agreement provides for attorney's fees of either $150.00 or 20 percent "of the amount of the delinquent principal amount, whichever is greater." (See Doc. No. 18-1 at 42). While the Agreement may stipulate this, there is no support in any of Plaintiffs' filings as to why 20 percent of the delinquent principal amount is a reasonable percentage, or why this amount is a legally-accepted deviation from the Court's normal determination of attorney's fees. Likewise, for these reasons, Plaintiffs will be required to submit the proper documentation for the correct amount of the "unpaid contribution" basis and accounting for reasonable attorney's fees. Plaintiffs are likewise instructed to provide any known legal authority for deviations from these statutorily-prescribed damages awards.

17

With this in mind, the Court will enter the following judgment. The Court **GRANTS** summary judgment in favor of the Plaintiffs with regard to Defendant's liability concerning its obligation to pay its withdrawal liability; however, as to the actual amounts of the total outstanding unpaid contributions, interest on these unpaid contributions, liquidated damages, and attorney's fees, the Court will require Plaintiffs to submit the proper documentation and legal authority for the correct determination of these amounts so as to provide a clearer accounting of the damages in accordance with 29 U.S.C. § 1132(g)(2). Until Plaintiffs have provided a complete and justifiable basis[13] for the imposition of the amounts specified in their Motion, such judgment on the proper damages amounts will be withheld. Once the record is complete, and both parties have been provided the opportunity to be heard as to these amounts, the Court will then enter final judgment in this case.

## VI.   CONCLUSION

It is undeniable that Defendant Sheesley Supply Company failed to perform in its obligation to continue contributing to the Western Pennsylvania Teamsters and Employers Pension Fund. While it is recognized that Defendant did avail itself of the ERISA review process once it had been assessed two partial withdrawal liabilities, this was not enough to remedy the situation. Once the review was completed and the assessments were confirmed, Sheesley chose not to arbitrate the withdrawal liability issue. Once the statutory time limit had

---

[13] It is recommended that Plaintiffs supply the Court with documentation as to the principal withdrawal liability amounts owed, accrued interest, the complete payment schedule supplied to Defendant with the March 9, 2007 Letter, all past payments made, legal basis for deviating from "reasonable attorney's fees," an itemization of attorney's fees, and any other information the Court can use to accurately assess the proper damages award pursuant to 29 U.S.C. § 1132(g)(2).

run, Defendant passed the point of no return, and the subsequent delinquency and default on its accepted payment schedule initiated this action.

Accordingly, Defendant is liable for its withdrawal liability obligations to the Plaintiffs. The amount of that liability is a question that requires further determination after the record has been sufficiently established. As stated previously, to collect the proper damages award in this case, Plaintiffs must present greater detail as to the underlying financial information concerning the outstanding principal withdrawal liability, total unpaid contributions, interest on these unpaid contributions, and itemized attorney's fees. After being provided with this information, the Court will proceed to make an accurate and fair assessment of the damages pursuant to ERISA and the MPPAA. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM J. DILLNER, JR. and ROY E. )
MARSHALL, Designated Trustees of the )
Western Pennsylvania Teamsters and )
Employers Pension Fund, )
                 )
         Plaintiffs, )   CIVIL ACTION NO. 3:10-cv-00122
                 )   JUDGE KIM R. GIBSON
     v. )
                 )
SHEESLEY SUPPLY COMPANY, INC., )
                 )
         Defendant. )

## ORDER

**AND NOW**, this 15th day of November, 2012, **IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Summary Judgment" (Document No. 18) is **GRANTED** as to the issue of withdrawal liability, but not to the amounts of withdrawal liability, liquidated damages, or attorney's fees.

**IT IS FURTHER ORDERED** that Plaintiffs provide this Court with the proper financial and legal documentation in order for the Court to make a judgment with regard to the proper damages amounts that is not inconsistent with this opinion.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

20